UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICKY E. OWENS,<br><br>               Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>               Defendant. | CASE NO.   C05-5537RBL<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 21, 2006 |

      Plaintiff, Ricky E. Owens, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert B. Leighton's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      Plaintiff currently is fifty-three years old.[1] Tr. 23. He has a high school education, two years of college course work, and past work experience as a general laborer, hospital attendant, shipping/receiving

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

clerk and pallet company lead. Tr. 15, 62, 67, 87.

On April 11, 2002, plaintiff filed an application for disability insurance benefits, alleging disability as of October 28, 2001, due to nerve ending pain and pain in his wrists. Tr. 14-15, 51, 61. His application was denied initially and on reconsideration. Tr. 23-25, 33. A hearing was held before an administrative law judge ("ALJ") on July 9, 2004. Tr. 398. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 398-433.

On October 13, 2004, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of left fifth finger amputation, left shoulder lipoma, status post release of Dupuytren's contracture, and chronic pain;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 21-22. Plaintiff's request for review was denied by the Appeals Council on May 4, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On August 15, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded to the Commissioner for further administrative proceedings for the following reasons:

(a) the ALJ erred in failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOC"); and

(b) the ALJ erred in failing to include all of plaintiff's functional limitations in the hypothetical question that was posed to the vocational expert.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends this matter be remanded for further administrative proceedings.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION
Page - 2

1  Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to
2  support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is
3  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson
4  v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than
5  a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.
6  1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than
7  one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d
8  577, 579 (9th Cir. 1984).

I.  **The ALJ Failed to Resolve the Conflict Between the Vocational Expert's Testimony and the DOT**

If the claimant cannot perform his or her past relevant work at step four of the disability evaluation process, at step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d)-(e). At the hearing, in response to the ALJ's question as to whether there were other jobs plaintiff could do, the vocational expert testified in relevant part as follows:

> One that comes to mind is a parking lot attendant which is DOT 915.473-010. It's listed as light, unskilled, SVP [special vocational preparation] two. About 28,000 [jobs] in the national economy and about 500 in the region. This job is actually a subsection. Those numbers that I gave you were actually a subsection of the overall pull of parking lot attendants and these are the people that occupy the booths when people come out of the parking lot garages or basically cashiers. It's a sit/stand position. I'm deviating from the [Dictionary of] Occupational Titles here in that my judgment that's a sedentary job and could be done one handed or at least with some assistance from another hand.

Tr. 428.

Further prompting from the ALJ elicited testimony from the vocational expert regarding the job of cleaner housekeeper (DOT 323.687-014). Tr. 429-31. The vocational expert testified that this job required frequent reaching and handling, but "[m]ore on the dominant side than the non-dominant side," and that the job's "gross handling" tasks could be performed "[m]ost of the time" with the dominant hand, "with the support" or balance "of the non-dominant" hand. Id. The job also would require the ability to perform "fine fingering" with the dominant hand on an "occasional" basis. Tr. 431. The vocational expert further testified that the job of cleaner housekeeper was classified as light and unskilled, with an SVP of two and "about 80,000 [jobs] in the national economy and 5,500 in the region." Id.

REPORT AND RECOMMENDATION
Page - 3

1    Plaintiff argues the vocational expert's testimony regarding the job of parking lot attendant deviated
2 from the description of that job contained in the DOT. Specifically, plaintiff asserts the DOT description of
3 that job requires frequent reaching, handling and fingering, with no distinction between the dominant and
4 non-dominant hands. A review of DOT 915.473-010 fails to reveal any such distinction (see Plaintiff's
5 Opening Brief, Appendix A) , and, indeed, the vocational expert admitted that her testimony deviated from
6 the DOT's description in that regard (Tr. 428). Plaintiff further correctly points out that DOT 323.687-014
7 also requires frequent reaching and handling, again with no distinction between the dominant and non-
8 dominant hands. See Plaintiff's Opening Brief, Appendix A.

9    Despite the deviations between the vocational expert's testimony and the description of the above
10 jobs in the DOT, plaintiff argues the ALJ failed to provide a reasonable explanation for those discrepancies
11 as he was required to do. The undersigned agrees. Before relying on evidence obtained from a vocational
12 expert to support a finding of not disabled, the ALJ is required to "elicit a reasonable explanation for any
13 discrepancy" or conflict with the DOT. Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999); SSR 00-
14 4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict
15 was resolved. SSR 00-4p, 2000 WL 189704 *4. This, the ALJ did not do.

16    The only comment the ALJ provided in his decision concerning the vocational expert's testimony
17 consisted in relevant part of the following:

> The Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined. The vocational expert testified that assuming the hypothetical individual's specific work restrictions, he is capable of making a vocational adjustment to other work. The vocational expert testified that given all of these factors the claimant could work as parking lot attendant for which there are 28,000 jobs nationally and 500 in the Pacific Northwest; and housekeeper for which there are 80,000 nationally and 5,500 regionally.
>
> Based on the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy.

25 Tr. 21. This discussion of the vocational expert's testimony is wholly insufficient.

26    Defendant argues the above statement was a "satisfactory" explanation of the discrepancy between
27 the vocational expert's testimony and the DOT under Johnson v. Shalala, 60 F.3d 1428, 1434 n.7 (9th Cir.
28 1995). In Johnson, the Ninth Circuit Court of Appeals found the ALJ did not err in deviating from the job

REPORT AND RECOMMENDATION
Page - 4

descriptions contained in the DOT in making "findings of fact" supporting that deviation, by noting "the vocational expert described the *characteristics and requirements* of jobs in the local area." Id. (emphasis added). Here, however, as noted by plaintiff, one cannot tell by reading the ALJ's decision that there even was a conflict between the vocational expert's testimony and the DOT. That is, while the ALJ commented on the numbers of jobs existing in the national and regional economies provided by the vocational expert, he failed to provide any discussion as to why the specific job characteristics and requirements testified to by the vocational expert justified his deviation from the descriptions contained in the DOT.

II. The Weight of the Evidence in the Record Does Not Clearly Support the Hypothetical Question Posed by the ALJ

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ posed the following hypothetical question to the vocational expert:

Let's do lift/carry at 50/25 [pounds]. He would be limited to 20/10 [pounds lifting] on the left, his non-dominant hand. Stand/walk six out of eight, sit six out of eight. He would be limited to only occasional use of his left upper extremity. No ropes, ladders, or scaffolds, and no heights or hazards.

Tr. 427-28. Plaintiff first argues this hypothetical question was improper because the ALJ's description of his ability to lift ten pounds frequently with his left hand is inconsistent with the ALJ's finding that he was able to use his left upper extremity only occasionally. Plaintiff further argues that this inconsistency is due to the ALJ's failure to properly address his inability to perform his activities of daily living and to properly evaluate the evidence in the record concerning those activities. Defendant counters that even if the above limitations could be found to be conflicting, the vocational expert expressed no confusion regarding those limitations, and plaintiff did not specify any further functional limitations the ALJ should have included in the hypothetical question based on this argument.

1        The undersigned does not find the left upper extremity use and lifting limitations the ALJ included in his hypothetical question to be so unclear that it prevented the vocational expert from providing reliable testimony. Indeed, although there may have been some confusion at first as to the specific meaning of the ALJ's limitations (see Tr. 428-29), upon further clarification, the vocational expert was able to identify jobs he felt plaintiff was capable of doing based on those limitations (Tr. 428-31). In addition, as noted by defendant, both the ALJ and the vocational expert focused primarily on the more restrictive "occasional use" left upper extremity limitation, rather than on the ability to lift with the left hand. To the extent that the vocational expert's testimony did concern the ability to perform job tasks frequently, furthermore, the vocational expert testified that most of those tasks could be performed by the dominant, or in this case right, hand. Tr. 402, 428-31.

        It also is not clear from plaintiff's Opening Brief, exactly what limitations he feels the ALJ should have included in the hypothetical question based on his ability, or lack thereof, to perform his activities of daily living. Plaintiff does argue in his Reply Brief that the main limitation not included therein concerns his "reliability to perform any work on a consistent basis." Plaintiff's Reply Brief, p. 4. Plaintiff bases this argument on the testimony of the medical expert, Dr. Robert Aigner, that his "major disability" consisted of "subjective complaints associated with" chronic pain, and that "the severity of those complaints" might "be sufficient at times to impair his ability to work on a continuous basis," and with respect to which was "primarily subjective and supported by objective findings." Tr. 426.

        Although the ALJ did not address this issue in his decision, plaintiff also failed to specifically raise it in a timely manner in his Opening Brief. Normally, such failure to do so would result in the undersigned declining to address it. In this case, however, because the undersigned is recommending that this matter be remanded for the reasons set forth elsewhere herein, on remand the Commissioner also shall re-determine whether any limitations based on plaintiff's alleged inability to work on a continuous basis due to chronic pain should be included in the hypothetical question as well.

        Plaintiff next argues the ALJ erred by failing to include in his hypothetical question any functional limitations caused by his inability to hold on to objects with his left hand. The record contains testimony from plaintiff that he had significant problems controlling how long he could hold on to an object with his left hand. See Tr. 414, 421. The record also contains objective medical evidence that plaintiff does have a

REPORT AND RECOMMENDATION
Page - 6

significant impairment with respect to his left hand. See Tr. 125, 132, 143, 146, 158, 168-69, 177-79, 189, 194, 198, 200-01, 204-06, 208, 216, 288, 290-91, 298, 300-01, 392-93.  It is not clear, however, that such evidence supports plaintiff's allegations regarding his inability to hold onto objects with that hand. See Tr. 132, 143-44, 151-53, 167-69, 170-71, 177-80, 183, 185, 194-96, 199-01, 204-06, 252, 289, 297, 300-01, 306, 308, 392-93.  Indeed, no medical source in the record has found him to be so limited.  Nevertheless, it appears the ALJ did not actually considered this potential limitation.  While the vocational expert testified that most of the tasks required by the jobs he identified could be done with the dominant hand, it is possible that such a limitation, if supported by the substantial evidence in the record, could affect plaintiff's ability to perform those jobs.  On remand, therefore, the Commissioner shall re-consider this issue as well.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because, as explained above, issues still remain as to whether or not plaintiff is disabled at step five of the disability evaluation process, this matter should be remanded for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

REPORT AND RECOMMENDATION
Page - 7

1  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 21, 2006**, as noted in the caption.

DATED this 27th day of March, 2006.

Karen L. Strombom
United States Magistrate Judge